McNAIRY, District Judge, concurred with Judge TODD in the opinion which he delivered. Upon the subject of subsequent notoriety he added:

The whole object of either description or notoriety is to enable a subsequent locator who uses reasonable industry to find the land first located, and thereby prevent an interference. My opinion, decidedly, is that if the objects called for are notorious at the time the entry is made, or become so before any person else makes an entry, the object of the law is complied with. It is refining too much to say that the entry shall be void, although it acquires the qualities of a good entry before the creation of other rights. What right has the second enterer to complain? He cannot say that he has been deceived; he cannot say to the first locator, "Your entry is void, because the objects called for in it were not notorious; by which means I was deceived, and induced to make an entry which interferes with your claim." He cannot say this if the objects were notorious before he made his entry; because, in that case he could not be deceived or misled. Suppose an entry to have been made a great many years ago, calling for the French Lick. but before it was known to a sufficient number of people to give it notoriety. It is known that at this day no place in West Tennessee is more notorious. If an entry were now to be made so as to interfere with the first entry, will any person pretend to say that it would hold the land? The object of notoriety is to give notice; and if this notoriety is acquired before the making of the second or subsequent entry, every purpose for which notoriety has been deemed necessary is answered. In short, I am clearly of opinion that if an entry possesses the quality of a good entry before the creation of other rights, it is valid, although the objects called for were not notorious at the time the entry was made.

Verdict for the defendant.

Land—Effect of notoriety of objects called for in entry: See McMillan v. Claxton, 4 Hayw. [Tenn.] 279, citing above case.

---

SIMMS (HAMILTON v.). See Case No. 5,-990.

---

## Case No. 12,869a.

### SIMMS v. PULLMAN SOUTH. CAR CO.[1]

### DELGADO v. SAME.

Circuit Court, E. D. Louisiana. May 4, 1878.

CARRIERS—CONTRACT OF SLEEPING-CAR COMPANY —PLEADINGS—EVIDENCE.

1. In an action against a sleeping-car company the petition averred the sale of a ticket from New Orleans to Philadelphia, and the consequent existence of a contract for the transportation of plaintiff, and of a common carrier's liability on the part of defendant for failure to transport beyond Washington. The answer admitted the sale of a ticket which entitled plaintiff to a berth in a sleeping car during the transit. and denied the violation of the contract which arose from the sale of ticket, and all other allegations of the petition. Held, that the pleadings presented a question of law, as to the legal effect of the contract, under which evidence was admissible on the part of defendant to show that the failure of the sleeping car to proceed beyond W. was caused by the refusal

---

1 [Not previously reported.]

of a connecting line to send forward a train, on account of riot.

2. In such case the court properly instructed the jury, in substance, that the contract for transportation was not with defendant, but with the various railroads over which passage tickets were purchased, and that the failure of a connecting line to send forward a train, on account of riot, was the result of no fault of defendant, if it had furnished a suitable car, with proper connections, for a continuous passage, and had such car in readiness to proceed over the connecting line.

[These were actions at law by Thomas Simms and by Samuel Delgado against the Pullman Southern Car Company for damages for failure of a sleeping car, in which they had engaged berths from New Orleans to Philadelphia, to proceed beyond Washington. Verdicts for defendants. Plaintiffs move for new trials.]

BILLINGS, District Judge. These cases were tried together, as the pleadings and the evidence were the same in both. They were tried before a jury, and the verdicts were for the defendants. They are now before me on motions for new trials. The undisputed facts in the cases were as follows: The defendants sold to the plaintiffs sleeping-car tickets from New Orleans to Philadelphia. The plaintiffs had the berths contracted for assigned to them, and they continued to occupy them until they reached Washington, when, on account of the disturbance occasioned by the riots of last summer, the Baltimore & Ohio Railroad Company did not send out any trains from Washington over their road. Accordingly, the car in which the plaintiffs had berths went no further than Washington, and the plaintiffs were compelled to take lodgings at a hotel, and incur other expenses, and for the failure of such car to proceed beyond Washington the suits were brought.

The principal grounds urged in the argument for new trials were—First, that the answers of the defendants did not allow them to show that the failure of the car to proceed beyond Washington was caused by the Baltimore & Ohio Railroad not sending trains beyond, on account of the riots; and, secondly, that the court erred in the construction which, in its charge to the jury, it gave to the contract, on the part of the defendants, arising from the sale of their sleeping-car tickets to the plaintiffs.

First, as to the admission of the evidence under the answer. These are actions under common law, and therefore, excepting so far as congress has made special provisions, such as that securing trial by jury of all issues of fact in the courts of the United States, are to be conducted according to the rules of practice prevailing in the highest tribunals of the state of Louisiana. The pleadings in our state courts, while not framed on the technical rules of the common law, are calculated, with great fairness, to reach the merits of a cause, and are quite similar to those prevailing at the present time in common-law states, where all that is valuable in the system of common-law pleading has been retained, and the artificial and arbitrary rules have been rejected. The petition in this case avers the sale of the tickets, and that there existed, in consequence thereof, a contract for the transportation of the plaintiffs from New Orleans to Philadelphia, and a liability on the part of the defendants, as that of common carriers. The answer admits the sale of the tickets which entitled the plaintiffs to berths in a sleeping car during their transit from New Orleans to Philadelphia, and denies that the defendants violated the contract which arose from the sale of these tickets, and denies all the' other allegations in the petition. The pleadings, as thus made up, presented something more than that which, under our own practice, would be deemed a general denial. They present the question of law as to the legal effect of the contract which was entered into between the defendants and the plaintiffs through the sale of the tickets, and the question of fact as to whether the defendants had complied with the obligations which they had incurred by such contracts. There was another issue of fact, as to the alleged concealment on the part of the agents of the defendants, at the time of the sale of the tickets, of the fact that the trains at that time between Washington and Philadelphia had ceased to run for the period of 36 hours, but this question was submitted to the jury under such instructions as I think were satisfactory to the plaintiffs.

The tickets which the defendants sold the plaintiffs were produced before the jury. They were as follows: "Pullman Southern. Not transferable. Good for this day and car only, when accompanied by a first-class railroad ticket. New Orleans to Philadelphia. Car No. ——. M. train. Double lower berth, No. ——. $10." It was in evidence that the plaintiffs purchased tickets for passage or transportation from the various railroad companies from New Orleans to Philadelphia, over the line of roads indicated by the sleeping-car tickets sold by the defendants to them.

The court construed the contract into which the defendants entered by the sale of the sleeping-car tickets as follows: That, in the first place, they obligated themselves to have throughout the entire line, as indicated upon their tickets, suitable cars to allow an uninterrupted transit. Secondly, that they obligated themselves to have provided such connections between the railroads intervening between the termini and over the route indicated upon their tickets as, according to the regular trains running upon such roads, would permit a continuous transit. Thirdly, that they obligated themselves that these roads were so situated, manned, and run as, according to their regularly established

trains, admitted of a continuous passage over the route specified in the tickets which were sold. Fourthly, that they obligated themselves to furnish proper attendance on such cars, and that they would stop with sufficient frequency, and for a sufficient length of time, to allow passengers to take their meals. The court further instructed the jury that if defendants had shown that they performed these obligations; that they furnished suitable cars; that they had proper connections over roads which were operated so as, from day to day, to have allowed, according to their ordinary trains, a continuous passage, and that, notwithstanding all this, one of the roads, to wit, the Baltimore & Ohio road, refused or failed to send forward any train of cars from Washington to Philadelphia, on account of apprehensions of the riot, and that this refusal or failure was the result of no fault of the defendants, who had an adequate car in readiness to proceed,—in that case they had performed all the obligations which they had undertaken, so far as they were connected with the passage of the plaintiffs. The gist of these instructions was that the contract on the part of the defendants was not one for transportation; that that was a distinct contract for transportation, made between the plaintiffs and the various railroads whose tickets of passage they had purchased; and that the obligations on the part of the defendants, though connected with the transportation of the plaintiffs, were only such as have been enumerated. Viewing the case either with reference to the pleadings, or the principles of law which are to govern on the merits of the case, I see no reason, after further examination, to change the views which I entertained at the trial.

Let the motions for new trials be refused.